Request of the House of Representatives
No. 87-080

OPINION OF THE JUSTICES

March 11, 1987

The following resolution, House Resolution No. 23, requesting an opinion of the justices, was adopted by the House of Representatives on March 3, 1987, and filed with the Supreme Court on March 4, 1987:

"Whereas, House Bill 70, an act prohibiting homosexuals from adopting, being foster parents, or running day care centers, has been introduced and is now pending before the house of representatives for consideration; and

"Whereas, HB 70 prohibits homosexual foster parents from adopting a child; prohibits the granting of a license to be a foster family to any family in which one or more of the adults is homosexual; and prohibits the granting of a license to operate a day care center to any applicant who is a homosexual; and

"Whereas, HB 70 establishes an irrebuttable presumption that homosexuals are unfit to serve as foster parents, adoptive parents, and to be licensed to operate day care centers; and

"Whereas certain questions have arisen concerning the constitutionality of HB 70; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court are respectfully requested to give their opinion on the following questions of law:

1. Does HB 70 violate the equal protection clause of either the United States Constitution or the New Hampshire Constitution?

2. Does HB 70 violate the due process clause of either the United States Constitution or the New Hampshire Constitution?

3. Does HB 70 violate the rights of privacy of either the United States Constitution or the New Hampshire Constitution?

4. Does HB 70 violate the freedom of association under either the United States Constitution or the New Hampshire Constitution?

5. Does HB 70 violate any other provisions of the United States Constitution or the New Hampshire Constitution?

"That the clerk of the House of Representatives transmit copies of this resolution and HB 70 to the Justices of the New Hampshire Supreme Court."

The following reply was returned:

*To The Honorable House of Representatives:*

On March 4, 1987, this court received a resolution from the House of Representatives requesting an Opinion of the Justices. The resolution requests that the justices give their opinion on five questions concerning the constitutionality of HB 70, a bill that would prohibit

homosexuals "from adopting any person, from being licensed as [members] of a foster family, and from running day care centers."

The court respectfully requests that it be excused from giving an opinion at this time. Because the bill does not define "homosexual," in order to render an opinion about the constitutionality of HB 70, we would have to supply our own definition to resolve the uncertainty about the scope of the legislature's possible intent in using that term.

While "homosexual" is understood generally to refer to a person who sexually prefers another of his or her own sex, the court does not know how broadly or narrowly the house of representatives would desire that definition to be applied in administering the statute. For example, should "homosexual" be limited to those currently engaging in physical homosexual practices, should it apply to any person who has ever at any time engaged in such a practice or could it apply to a person who considers himself or herself to be a homosexual but who has never performed a homosexual act? Should homosexual practices include any form of sexual contact, as defined in RSA 632-A:1, IV, or should "sexual penetration," as defined in RSA 632-A:1, V, be required? Should "homosexual" refer to a bisexual person?

Without a more definite statement of the house's perception of the disqualifying homosexuality, it would be difficult to provide a useful answer to the questions. Our only alternative would be speculation about the scope of the sponsors' intended purpose, which would render our answers so hypothetical as to lack practical value. Moreover, the definition to be given the term "homosexual" involves questions of policy which in this context are the sole prerogative of the legislature.

The court, therefore, respectfully requests the House of Representatives to furnish a definition of "homosexual" as it is to be used in the bill, as well as a statement of factual findings about the nexus between homosexuality as the legislature would define it and the unfitness of homosexuals as declared by the bill. Such factual findings would be highly relevant and helpful in answering the questions, as well as in passing on the bill in greater detail if it is subsequently enacted and challenged. The due process and equal protection questions involve the relation between the statute and lawful legislative objects. While legislative fact-findings are not indispensable in ruling on such questions, they can be extremely helpful to the courts and can affect the results reached.

DAVID A. BROCK
WILLIAM F. BATCHELDER
DAVID H. SOUTER
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III

March 11, 1987